FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 12, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| VALERIA P.,[1]<br><br>                    Plaintiff,<br><br>        v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | No.    4:23-cv-3002-EFS<br><br>**ORDER REVERSING IN PART AND AFFIRMING IN PART THE ALJ'S DENIAL OF BENEFITS** |

Plaintiff Valerie P. struggles with anxiety attacks. She appeals the denial of social-security and supplemental-security-income benefits by the Administrative Law Judge (ALJ). For the period after October 5, 2021, the ALJ's decision to deny disability is supported by substantial evidence, as the record after that date clearly reflects that Plaintiff's anxiety symptoms so improved that she could work fulltime. However, the record reflects that Plaintiff's anxiety was disabling from the alleged onset date of May 17, 2019, to some date between April 7, 2021, and October 5, 2021. The matter is remanded to the ALJ to assess at what point between April 7,

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

2021, and October 5, 2021, Plaintiff's anxiety improved to such degree that she was able to work fulltime.

## I.    Background

In 2019, Plaintiff filed applications for benefits under Title 2 and 16, claiming disability beginning May 17, 2019, based on severe panic and anxiety.[2] After the agency denied her applications initially and on reconsideration, Plaintiff requested a hearing before an ALJ.[3] In March 2022, ALJ Laura Valente held a telephonic hearing at which Plaintiff and a vocational expert testified.[4]

Plaintiff testified that her anxiety causes panic attacks. She shared that in May 2019 she was fired from a fast-food restaurant because, due to her anxiety, she failed to appear for work and/or failed to complete work shifts too often.[5] Plaintiff stated that, although medication ultimately improved her symptoms, she continues to have daily panic attacks even though she mostly stays home and goes to stores with a companion.[6]

---

[2] AR 210–22.

[3] AR 130–49.

[4] AR 57–79.

[5] AR 63, 69.

[6] AR 69, 70.

The ALJ issued a written decision denying disability.[7] As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2024.

- Step one: Plaintiff had not engaged in substantial gainful activity since May 17, 2019, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: anxiety disorder, panic disorder, post-traumatic stress disorder (PTSD), and depressive disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

    She can perform simple, routine tasks, can work superficially and occasionally with the general public, and can work in the same room with coworkers but not on tasks that require coordination of work activity.

- Step four: Plaintiff could perform past relevant work as an agricultural produce sorter.

---

[7] AR 10–38. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

- Alternatively, step five: Plaintiff could work as a janitor, hand packager, and auto detailer.[8]

In reaching her decision, the ALJ found:

- the reviewing opinion of John Gilbert, PhD, mostly persuasive.
- the reviewing opinion of Carol Moore, PhD, persuasive.
- the examining opinion of Patrick Metoyer, PhD, somewhat persuasive.
- the examining opinion of Thomas Genthe, PhD, and the reviewing opinion of Brian VanFossen, PhD, not persuasive.[9]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence.[10] Likewise, the ALJ discounted the lay statement from Plaintiff's mother.[11]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[12] Plaintiff timely appealed to the Court.

---

[8] AR 13–34.

[9] AR 27–30.

[10] AR 20–27.

[11] AR 30–21.

[12] AR 1–6.

## II.    Standard of Review

The ALJ's decision is reversed only if it is not supported by substantial evidence or uses the wrong legal standard, and such error impacted the nondisability determination.[13] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]

## III.    Analysis

Plaintiff argues the ALJ erred by improperly rejecting her symptom reports and the medical opinions from Dr. Genthe, Dr. VanFossen, and Dr. Metoyer. The Court agrees in part. As is explained below, the ALJ failed to consider that Plaintiff's symptoms were disabling until they improved, with improvement occurring at some point six months after Dr. VanFossen's October 7, 2020 opinion and October 5, 2021. The ALJ's error impacted her analysis of Plaintiff's symptoms and the medical opinions.

### A.    Symptom Reports

The ALJ was required to consider the relevant factors and provide "specific, clear and convincing" reasons supported by substantial evidence for rejecting

---

[13] 42 U.S.C. § 405(g); *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[14] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

1

2

Plaintiff's symptom reports.[15] Here, the ALJ offered several reasons for discounting Plaintiff's symptom reports—each reason is addressed below.

3

    1.   <u>Improvement with treatment</u>

4

5

6

7

First, the ALJ found that Plaintiff "reported general improvement of symptoms since she began regular engagement with medication management and counseling."[16] A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms."[17] Symptom improvement,

8

9

10

11

12

13

14

15

16

17

18

19

20

[15] Factors to be considered by the ALJ when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; 6) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms; and 7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

[16] AR 24.

21

22

23

[17] 20 C.F.R. §§ 416.929(c)(3), 404.1529(c)(3). *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled

however, must be weighed within the context of an "overall diagnostic picture," particularly for mental-disorder symptoms which often wax and wane.[18] If treatment relieves symptoms to an extent that allows the claimant to return to a level of function she had before she developed mental-disorder symptoms, such treatment can undermine a claim of disability.[19] Here, by October 5, 2021, at the latest, Plaintiff's symptoms were so relieved that she returned to a level of function that would permit her to work fulltime again.

As background, Plaintiff began experiencing daily anxiety and panic attacks after an attempted carjacking in 2015. The record reflects that by 2018 Plaintiff was engaged in treatment for her anxiety. After she was fired from her job in May 2019, Plaintiff visited the emergency department four times for anxiety.[20] She also visited primary care providers, who prescribed—and later adjusted—anxiety medication.[21] After March 2020, when several stringent COVID measures were

---

effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

[18] *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods ... are not inconsistent with disability.").

[19] *See* 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1).

[20] AR 342–49, 316–18.

[21] AR 316–21, 323–26, 424–26.

implemented in Washington, Plaintiff's visits to her primary care providers reduced in frequency until September 2020, when her anxiety medications were changed to citalopram and clonazepam.[22]

During her behavioral health services appointment in February 2021, Plaintiff reported increased functionality and that "things were getting better, slowly but surely."[23] Later that month, Plaintiff again reported that she had experienced some improvement over the holidays but she was now experiencing some breakthrough anxiety; the provider noted that Plaintiff was anxious, dysphoric, and she had racing and ruminating thoughts—the provider increased the level of citalopram.[24] In April 2021, Plaintiff reported that the increase in the citalopram helped as she was not having anxiety and she was "doing a lot better."[25] Plaintiff reported continued improvement to care providers, and in September 2021, the care provider noted that Plaintiff's mood and affect were appropriately interactive.[26] On October 5, 2021, Plaintiff reported to her therapist that she was

---

[22] AR 411–12, 441.

[23] AR 453. *But see* AR 449 (Nov. 2020: reporting that panic attacks are so bad it keeps her from maintaining a job).

[24] AR 455–63.

[25] AR 464–65.

[26] AR 431–32 (June 2021: reporting continued improvement since increase in citalopram and her mood is good); AR 534 (Aug. 2021: reporting doing "a lot

looking into returning to work.[27] Her therapist continued to note increased functionality in November and December 2021, and in February 2022, a care provider again noted that Plaintiff's mood and affect were appropriately interactive.[28]

Based on the objective findings in the medical record and Plaintiff's reported improved functioning, the ALJ reasonably found Plaintiff's anxiety improved. By October 5, 2021, due to medication adjustments and therapy, Plaintiff's anxiety sufficiently waned to a level that allowed her to return to work, as was reflected by Plaintiff's statement to her therapist on this date that she was looking into returning to work. "[O]ver time, [Plaintiff] moved from a state where" she was unable to "engage in meaningful work to a state in which [she] was significantly less hindered."[29]

---

better," as her panic attacks had reduced from several times per day to 3 times per week); AR 521-25 (Sept. 1, 2021: "mood and affect are appropriately interactive").

[27] AR 551.

[28] AR 553 (Nov. 2021: reporting that she was "starting to feel more like herself" and that she continues to expand her engagement in activities outside the home and social interactions); AR 556 (Dec. 2021: "She shared details of the steps taken in actively seeking stable employment."); AR 512 (Feb. 2022: "Mood and affect are appropriately interactive").

[29] *Smith v. Kijakazi*, 14 F.4th 1108, 1114 (9th Cir. 2021).

However, the ALJ erred by discounting Plaintiff's symptom reports for the entire alleged disability period. The record does not show that Plaintiff's symptoms consistently waned until sometime *after* the consultative psychological examinations in the fall of 2020 and before October 5, 2021. On remand, the ALJ is to consider the date by which Plaintiff's anxiety symptoms sufficiently, and consistently, reduced to permit her to return to fulltime work—a date between April 7, 2020 (six months after Dr. VanFossen's opinion) and October 5, 2021 (Plaintiff's self-report that she was looking into returning to work and by which the medical records clearly show stabilization of anxiety symptoms).

### 2.    Failure to engage in treatment

Second, the ALJ discounted Plaintiff's symptom reports because she "did not initially engage with treatment commensurate with the severity of her allegations or reported symptoms."[30] A claimant's course of treatment, including an inadequately explained failure to seek treatment, is a relevant factor for the ALJ to consider when assessing the claimant's symptom reports.[31] Yet, the ALJ must discuss whether the claimant had good cause for not seeking treatment, including whether the mental impairment contributed to her not seeking rehabilitation.[32]

---

[30] AR 23.

[31] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[32] *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1209–1300 (9th Cir. 1999) ("[I]t is a questionable practice to chastise one with a mental impairment for

Here, the ALJ noted both that—once Plaintiff "engaged in more targeted ongoing treatment of her symptoms through both medication management and psychotherapy—her symptoms quickly became more manageable with minor adjustments of medication and introduction of copying skills" *and* that "[a]fter apparent initial reluctance to engage with mental healthcare, she did so and saw benefit from good adherence.[33]

As was discussed above, the longitudinal record reflects that Plaintiff's functioning improved with treatment, and that by October 5, 2021, she clearly improved to the extent that she could return to fulltime work. However, the record does not clearly and convincingly reflect a reluctance to participate in treatment. Plaintiff did decline to take anxiety medication in June 2018, which was about a year before the disability onset date, because of a reported historical poor response to anxiety medications. However, Plaintiff reconsidered, and she began taking anxiety medication prior to the disability onset date of May 17, 2019.[34] From July

---

the exercise of poor judgment in seeking rehabilitation."); *Fair v. Bowen*, 885 F.2d 597, 603–04 (9th Cir. 1989); Soc. Sec. Rlg. 18-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims.

[33] AR 23, 24.

[34] AR 340 (June 2018: declining medication and choosing instead to focus on deep-breathing techniques); AR 335–36 (Dec. 2018: prescribing clonidine and noting that "[p]atient is open to meeting with [behavioral health care] and has met with them

2019 to February 2020, Plaintiff was treated about monthly for anxiety and visited the emergency room four times for anxiety. Medication was prescribed and adjustments continued to be made to the type and amount of medication.[35] Plaintiff had not yet begun individual therapy; however, the ALJ failed to consider that this hesitation was related to her anxiety.[36] Plaintiff also did have a break in treatment with her primary care providers during the initial months of COVID from March to September 2020, but during this time she continued taking anxiety medication.[37] In the fall of 2020, she resumed regular treatment with a primary care provider, along with medication-management appointments and individual therapy sessions.[38] Although she missed some appointments, she maintained her medication as prescribed, with adjustments being made to address her anxiety

recently"); AR 329 (April 2019: restarting buspirone and noting that Plaintiff has "previously tried several different [anxiety] medications but states that they make her 'sick to her stomach'").

[35] AR 319–26, 342–49, 413, 424–26.

[36] *See Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (holding an ALJ may not reject a claimant's symptom testimony based on a lack of treatment if "the record affords compelling reason to view such departures from prescribed treatment as part of claimant's underlying mental afflictions").

[37] *See* AR 367–68, 372, 409.

[38] *See, e.g.*, AR 371, 441, 442, 449, 453, 455.

symptoms.[39] This record does not reflect a failure to participate in treatment to the extent that would constitute a clear and convincing reason to discount Plaintiff's reported anxiety symptoms.

### 3. Objective mental-health findings

Third, the ALJ found that the "objective mental status findings in the record are also not consistent with chronic debilitating symptoms."[40] Objective medical evidence—signs, laboratory findings, or both—is a relevant factor for the ALJ to consider when assessing a claimant's symptoms.[41] Here, the medical records reflect that in July 2019, Plaintiff was observed as anxious, depressed, restless, and agitated.[42] A month later, she was observed with a tachycardic heart rate and being very anxious at the emergency room.[43] Two months later, she was observed as anxious, depressed, and restless, and her thought process and cognitive function were significant for blocking and impaired concentration.[44] Two weeks later she returned to the emergency room for chest pains and had an anxious affect and

---

[39] AR 430–31, 451, 452, 453, 455–57.

[40] AR 23.

[41] 20 C.F.R. § 416.902(k); 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[42] AR 327.

[43] AR 346–47.

[44] AR 319–20.

tremors to her bilateral hands.[45] During an emergency visit the next month, the provider noted that she presented with breakthrough anxiety.[46]

Like the observations by treating providers, the consultative examiners made mental-health findings consistent with Plaintiff's reported symptoms. During her psychological consultative examination with Dr. Metoyer in August 2020, Dr. Metoyer observed Plaintiff to be anxious, down, depressed, and irritable, with impaired memory.[47] Plaintiff completed 2 of 6 digits in the forward direction and 2 of 5 digits in the reverse direction; Dr. Metoyer recommended that Plaintiff have the assistance of a payee to manage funds.[48] During her psychological consultative examination in September 2020, Dr. Genthe observed that Plaintiff had mild difficulties following the conversation and that she recalled 1 of 4 objects after a 5-minute delay.[49]

As previously discussed, the medical records begin showing slow improvement in the beginning of 2021. For instance, in February 2021, Plaintiff was observed to be anxious, dysphoric, with tracing and ruminating thought process, but she also reported that she had had short-term improvement over the

---

[45] AR 344–45.

[46] AR 343.

[47] AR 368–70.

[48] AR 366–70.

[49] AR 380–87.

holidays.[50] By April 2021, she reported that she was doing a lot better, and in June 2021, she was observed with a good mood and no anxiety.[51] In August 2021, her therapist did not note any abnormal findings and indicated that Plaintiff was open and engaged throughout the session.[52] Consistent with the steady improvement, during her September 2021 physical, Plaintiff's mood and affect were appropriately interactive.[53] At her medication-management appointment later that month, it was noted that Plaintiff's anxiety was a lot better and that her "goal of symptom remission is being met on current medication regiment therefore, no changes required today."[54] Then, during her next therapy appointment on October 5, 2021, Plaintiff reported that she was looking into going back to work.[55]

The longitudinal record reflects that Plaintiff's anxiety lessened and her functioning increased during the at-issue period. The ALJ failed to appreciate that symptoms were worse/disabling during the first part of the at-issue period.[56] While substantial evidence supports the ALJ's finding that the objective medical evidence

---

[50] AR 453–57.

[51] AR 454–54, 431–32.

[52] AR 534.

[53] AR 523.

[54] AR 542.

[55] AR 551.

[56] *See Smith*, 14 F.4th at 1114.

1  during the latter portion of the at-issue period is inconsistent with Plaintiff's

2  reported debilitating anxiety symptoms, the ALJ's finding as to the initial period is

3  not so supported.

4          4.    Activities

5          Fourth, the ALJ considered that Plaintiff's activities and abilities were

6  inconsistent with her symptom reports.[57] If a claimant can spend a substantial

7  part of the day engaged in pursuits involving the performance of work-related

8  functions, the ALJ may find these activities inconsistent with the reported

9  disabling symptoms.[58] Here, the ALJ highlighted that Plaintiff's activities

10  indicated that "her abilities to interact with others and manage anxiety symptoms

11  around others" were better overall than she suggested.[59] To support this finding,

12  the ALJ highlighted that Plaintiff spent time at the park, visited her mother, lived

13  with relatives, began looking at going back to work, and assisted a friend with a

14  broken-down vehicle.[60]

15          It was appropriate for the ALJ to consider that the record reflects an uptick

16  in Plaintiff's public activities, including looking for work and helping others after

18  [57] AR 25.

19  [58] *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (superseded in part on

20  other grounds by statute).

21  [59] AR 25.

22  [60] AR 25.

DISPOSITIVE ORDER - 16

October 2021. Plaintiff's increased activities after October 2021 are a clear and convincing reason to discount her symptoms after that period. Yet, the ALJ failed to consider that Plaintiff's sustained improvement by the fall of 2021 contrasted with her earlier, more limited activities. Also, that Plaintiff spent short periods of time at the park at the suggestion of her counselor and that she spent time with her mother and those she lived with do not serve as clear and convincing reasons to discount her claimed anxiety symptoms in public places.[61]

5.    Inconsistent statements

Fifth, the ALJ discounted Plaintiff's reported symptoms because of inconsistent statements.[62] An ALJ may consider whether a claimant offers conflicting symptom reports or other inconsistent statements that indicate a lack of candor.[63] Here, the ALJ found that Plaintiff offered inconsistent statements about

---

[61] *See, e.g.*, *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (Ms. Vertigan could grocery shop without assistance, walk approximately an hour in the malls, play cards, swim, watch television, and read, but these activities did not consume a substantial part of her day and so did not detract from her credibility).

[62] AR 25–26.

[63] 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

being able to perform household chores and go shopping, and whether she had suffered from physical violence and assault.[64] This record, however, does not provide substantial evidence of inconsistent statements justifying this to serve as a clear and convincing reason to discount Plaintiff's reported symptoms.

For instance, Plaintiff's ability to perform household chores is largely immaterial as to whether Plaintiff will experience panic attacks when she is in public. Second, the ALJ's finding that Plaintiff offered inconsistent statements to Dr. Genthe and Dr. Metoyer about her ability to go shopping is not supported by substantial evidence. The ALJ highlighted that Plaintiff told Dr. Genthe that she can go shopping for groceries and other personal needs. However, Plaintiff also told Dr. Genthe that she has panic attacks when she goes outside and is alone, and thus, she "stay[s] home because [she] is afraid of the panic attacks" and she spends "time with [her] grandmother."[65] Plaintiff's statements when considered together are consistent with what she told Dr. Metoyer: "The claimant reports difficulty leaving the house, leaves about one to two times per week. She notes needing to be with somebody due to anxiety."[66]

In addition, contrary to the ALJ's finding otherwise, the record indicates that Plaintiff consistently indicated that she began having panic attacks after an

---

[64] AR 25–26.

[65] AR 381–82.

[66] AR 366.

individual tried to carjack her vehicle.[67] Whether or not the carjacking was in fact the trigger for her anxiety, rather than the one-time sexual abuse she suffered as a child and which she did not consistently report to providers, is immaterial to the assessment of the reliability of Plaintiff's reported anxiety symptoms.[68] Plaintiff is not medically trained; that she may have failed to appreciate that other trauma in her life contributed to her anxiety and that she should have consistently reported all trauma to providers and examiners is not a clear and convincing basis to reject her anxiety symptoms.

The ALJ's finding that Plaintiff offered inconsistent statements is not supported by substantial evidence.

### 6.    State unemployment insurance payments

Finally, the ALJ discounted Plaintiff's symptom reports because she filed for, and collected, unemployment insurance payments for the first half of 2020 and

---

[67] AR 316, 319, 326. *See also* AR 338 ("Traumatic incident 3 years ago, had a man jump into her truck one morning at 0430 when she was warming up her truck, she shut off the truck and took the keys and ran and got her brothers attention. Able to avoid physical injury but patient has not been able to control her anxiety since.").

[68] *Compare* AR 443 ("She was touched by her stepfather at the age of 12 one time and she told her mother. It did not happen again."), *with* AR 477 (The care provider checked the "No Concerns" box for whether the "Client has experienced abuse or neglect and/or has had a previous traumatic incident.").

throughout 2021, because during the process to apply for unemployment payments, Plaintiff had to certify that she was available and willing to accept any suitable work or that she was unemployed because of the COVID pandemic.[69] The ALJ accurately highlighted that an individual collecting unemployment benefits in Washington agrees that she "must be ready, able, and willing, immediately to accept any suitable work which may be offered."[70] However, the ALJ needed to take her analysis one step further and assess whether the record reflected whether Plaintiff held herself out as available for fulltime versus parttime work. Because the ALJ did not question Plaintiff about this during the hearing, the record does not contain evidence on this point.[71] Therefore, that Plaintiff collected unemployment benefits does not serve as a clear and convincing reason supported by substantial evidence to discount her reported symptoms.

---

[69] AR 26.

[70] RCW 50.20.0101(1)(c)(i).

[71] *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161–62 (9th Cir. 2008) ("[W]hile receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime, the record here does not establish whether Carmickle held himself out as available for full-time or part-time work. Only the former is inconsistent with his disability allegations.").

DISPOSITIVE ORDER - 20

1

2    7.    <u>Summary</u>

3        The ALJ offered three clear and convincing reasons to discount Plaintiff's

4    reported disabling symptoms during the latter portion of the alleged disability

5    period (by October 5, 2021): that Plaintiff's symptoms improved with treatment to

6    an extent that allowed for fulltime work, that the objective mental-health findings

7    were inconsistent with her disabling symptoms during the latter portion of the

8    alleged disability period, and her post-October 5, 2021 activities were inconsistent

9    with her reported disabling panic attacks. However, the ALJ failed to specify clear

10   and convincing reasons for discounting Plaintiff's reported disabling panic attacks

11   during the initial portion of the alleged disability period.

**B.    Medical Opinions**

        Plaintiff argues the ALJ failed to fully incorporate the psychological opinions

from Dr. Genthe, Dr. VanFossen, and Dr. Metoyer. As is explained below, the ALJ

erred by finding these opinions not supported by and inconsistent with the record

during the initial part of the alleged disability period.[72]

---

[72] An ALJ must consider and articulate how persuasive she found each medical

opinion, including whether the medical opinion was consistent with and supported

by the record. 20 C.F.R. §§ 404,1520c(a)–(c), 416.920c(a)–(c); *Woods v. Kijakazi*, 32

F.4th 785, 792 (9th Cir. 2022).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

    1.    <u>Dr. Genthe and Dr. VanFossen</u>

In September 2020, Dr. Genthe conducted a psychological evaluation of Plaintiff and diagnosed her with Panic Disorder and rule-out Personality Disorder.[73] Dr. Genthe opined mild and moderate limitations except he found that Plaintiff was severely limited in her abilities to maintain appropriate behavior in a work setting and complete a normal workday and work week without interruptions from psychologically based symptoms.[74] Dr. Genthe estimated that six months of additional treatment "may likely . . . help [Plaintiff] regain the necessary emotional functioning to resume fulltime work related activities."[75]

Dr. VanFossen reviewed Dr. Genthe's opinion and determined that the Panic Disorder diagnosis was supported by the evidence, but the Personality Disorder was not supported by the clinical symptoms. Nonetheless, Dr. VanFossen agreed with Dr. Genthe's severity ratings and 6-month duration estimate, noting "re-assessment after a half year of treatment is reasonable and consistent with the severity noted in the text."[76]

The ALJ found Dr. Genthe's and Dr. VanFossen's opinions not persuasive because 1) Dr. Genthe's examination occurred before Plaintiff more regular

---

[73] AR 484–91.

[74] AR 487.

[75] AR 488.

[76] AR 502.

outpatient mental-health treatment and quickly improving; 2) the opinions limited the disabling limitations to less than 12 months; 3) the "severe" ratings were poorly supported by explanation; 4) the severe ratings were inconsistent with the examination findings and Plaintiff's statements to Dr. Genthe; 5) neither Dr. Genthe nor Dr. VanFossen reviewed outside records, and they were therefore unaware that persistent severe limitations were inconsistent with treatment records; and 6) they were unaware of Plaintiff's inconsistent statements as to the potential cause of her anxiety.[77]

The ALJ found that the longitudinal record instead supported the reviewing opinions of Dr. Gilbert and Dr. Moore.[78] Because Dr. Gilbert's and Dr. Moore's opinions, which indicate only mild or moderate limitations, contradict Dr. Genthe's and Dr. VanFossen's marked limitations, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Genthe's and Dr. Van Fossen's opinions.[79]

       *a.*   *Improvement with treatment*

Whether a claimant improves with treatment to an extent that she can sustain fulltime work is a relevant factor for the ALJ to consider when evaluating

---

[77] AR 29–30.

[78] AR 27–28 (citing AR 88–92, 101–05, 112–27).

[79] *Lester*, 81 F.3d at 830.

medical opinions.[80] Here, as discussed above, the longitudinal record reveals that Plaintiff did ultimately improve with treatment to an extent that she was able to resume looking for fulltime work. By October 5, 2021, the instances of noted improved symptoms in treatment records were no longer isolated, thereby indicating that Plaintiff's anxiety symptoms had lessened sufficiently to permit sustained employment. However, the medical record at the time of Dr. Genthe's psychological evaluation (September 24, 2020), and Dr. VanFossen's review of such (October 7, 2020), had not yet shown sustained improvement. Therefore, that Plaintiff later improved with treatment was not a clear and convincing reason supported by substantial evidence for discounting Dr. Genthe's and Dr. VanFossen's opinions for the entire at-issue period.[81]

---

[80] Soc. Sec. Rlg. 18-3p (requiring the prescribed treatment to be expected to restore the individual's ability to engage in substantial gainful activity).

[81] *See Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

1

       *b.    Durational requirement*

2

      Under the Social Security Act, the ALJ can consider only those limitations

3

that persist for a continuous period of at least 12 months.[82] The ALJ accurately

4

highlighted that Dr. Genthe and Dr. VanFossen noted the impairment was

5

expected to persist with available medical treatment for 6 months—however, the

6

ALJ failed to consider the context in which these estimates were made. Dr. Genthe

7

wrote:

8
> Despite having taken prescribed medication for some time, her
> current regimen does not appear to be adequately targeting

9
> interfering symptoms, which are likely to interfere with her ability to
> initiate or maintain future employment. It is recommended that she

10
> continue working with her treatment providers in an effort to fine-
> tune her medication regimen for effectiveness. Additionally, continued

11
> involvement in mental health counseling is recommended to address
> various psychosocial stressors that contribute to her current level of

12
> emotional distress. . . . Given her response to treatment, and willing
> participation, a period of six months may likely be sufficient to

13
> address her treatment needs at least moderately well, and help her
> regain the necessary emotional functioning to resume fulltime work

14
> related activities.

15

      When Dr. Genthe evaluated Plaintiff in September 2020, Plaintiff had been

16

taking prescribed medication for her anxiety for at least 17 months, during which

17

time the medication was adjusted.[83] Although her attendance at counseling was

18

19

20

[82] 20 C.F.R. §§ 404.1505(a), 404.1509, 416.905(a), 416.909.

21

[83] *See* AR 329–30 (April 2019: starting buspirone); AR 328 (July 2019: increasing

22

buspirone); AR 425 (Jan. 2020: starting sertraline); AR 442 (Oct. 2020: started

23

not consistent until the fall of 2020, the ALJ failed to consider that Plaintiff's anxiety contributed to her failure to attend and that Plaintiff's medication continued to be adjusted in order to minimize her anxiety symptoms.[84] The longitudinal record reflects that Plaintiff suffered from severe anxiety from May 17, 2019 (when she was fired from her employment), until at least 6 months after Dr. VanFossen's October 7, 2020 opinion (April 7, 2021). Like Dr. Genthe and Dr. VanFossen opined, Plaintiff began to improve over time as her medications continued to be finetuned and she participated in therapy. By October 5, 2021, Plaintiff's improved anxiety symptoms were no longer isolated but sustained.

Plaintiff suffered disabling anxiety symptoms for more than 12-months after the May 17, 2019, disability onset date, with the disability ending date being sometime between April 7, 2021, and October 5, 2021.

---

clonazepam and citalopram about a month prior); AR 533 (Aug. 2021: reducing clonazepam).

[84] *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[T]he fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that Dr. Brown's assessment of claimant's condition is inaccurate.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

c.   *Explanation provided and supporting basis*

The ALJ found that Dr. Genthe's and Dr. VanFossen's "severe" ratings were poorly supported by explanation, they were inconsistent with the examination findings and Plaintiff's statements to Dr. Genthe, and they were made without a review of treatment records, which the ALJ deemed to show mild symptoms and inconsistent statements from Plaintiff as to the cause of her anxiety. Whether a medical opinion is consistent with the longitudinal record—including Plaintiff's reported symptoms—and is based on more record review and supporting explanation are factors for the ALJ to consider.[85]

Here, the ALJ found Dr. Genthe's and Dr. VanFossen's opinions inconsistent with Plaintiff's normal perception, orientation, speech, balanced and reciprocal flow of conversation, cooperativeness, friendliness, attention, and adequate insight and judgment.[86] Yet, these normal findings were not the basis for Dr. Genthe's and Dr. VanFossen's opinions that Plaintiff's anxiety markedly limited her ability to maintain appropriate behavior in a work setting and complete a normal work day/week.[87] Instead, Dr. Genthe indicated that Plaintiff's memory, concentration, and abstract thought were not within normal limits and she had mild difficulties

---

[85] 20 C.F.R. §§ 404.1520c, 416.920c.

[86] AR 29.

[87] *See Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007) ("[A]n ALJ must evaluate the physician's assessment using the grounds on which it is based.").

following the conversation.[88] He noted Plaintiff's reported anxiety symptoms as hyperventilating, chest pain, headache, confusion, sweatiness, and nausea.[89] The ALJ failed to focus on the reasons underlying the psychologists' opined marked limitations.

Neither Dr. Genthe nor Dr. VanFossen reviewed treatment records. However, the treatment records before Dr. Genthe's evaluation indicate that Plaintiff reported similar panic-attack symptoms as those she reported to Dr. Genthe and reflect that she was observed with anxiety-related symptoms.[90]

---

[88] AR 395–97.

[89] AR 393.

[90] *See, e.g.*, AR 348 (July 2019: reporting chest pain, tingling of her hands, and hyperventilation); AR 326 (July 2019: appeared anxious, depressed, restless, and agitated); AR 346–47 (Aug. 2019: reporting concern that her abdominal pain was related to her anxiety and observed to be "very anxious" with tachycardic heart rate); AR 319–20 (observed to be anxious, depressed, restless, with concentration impaired and blocking thought process); AR 342–43 (Nov. 2019: reporting chest pain and hyperventilating; exam noted to be consistent with anxiety); AR 426–27 (noting that anxiety is so bad that she is not leaving her house; blood pressure is elevated); AR 411 (April 2020: reporting an increase in the frequency of panic attacks and observed to be somewhat anxious although she did smile and engage well).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Therefore, the treatment notes before Dr. Genthe's examination are consistent with their opinions. And, as otherwise discussed, any inconsistency by Plaintiff in "reporting a history of violent trauma and chronic pain in one exam [with Dr. Metoyer] and denying such issues in others" does not constitute substantial evidence to discount these opinions, as Plaintiff—who is not medically trained—did not appreciate that her anxiety could have been triggered by past-abuse in addition to the carjacking. The consistency of Plaintiff's description of her symptoms to providers and Dr. Genthe, and the lack of evidence suggesting that she was exaggerating these symptoms, indicate that her clinical interview with Dr. Genthe was reliable and an adequate basis for Dr. Genthe's opinion.[91]

---

[91] *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (concluding that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness"). The Commissioner argued that *Buck* is no longer good law because of the change in regulations pertaining to the evaluation of medical opinions. However, *Buck*'s requirement that, in the mental-health arena, an ALJ must consider a psychiatric evaluation as objective medical evidence to the extent it relies on the clinician's observations and testing, even though it also relies on the patient's self-reports, is not impacted by the new regulations.

1

### d.    Summary

2    The ALJ failed to offer specific and legitimate reasons for discounting

3    Dr. Genthe's and Dr. VanFossen's marked limitations, as of when the opinions

4    were issued in the fall of 2020. However, the medical record after October 5, 2021,

5    reflects that—as anticipated by Dr. Genthe and Dr. VanFossen—Plaintiff slowly

6    improved to such an extent that she was able to regain the necessary emotional

7    functioning to resume fulltime work-related activities.

8    ### 2.    Dr. Metoyer

9    In August 2020, Dr. Metoyer conducted a psychological evaluation of

10    Plaintiff and diagnosed Plaintiff with Panic Disorder, PTSD, and Major Depressive

11    Disorder (recurrent, moderate). He opined that her ability to complete a normal

12    workday or work week without interruption from her mental-health symptoms and

13    deal with workplace stress was moderately impaired, and her ability to maintain

14    regular workplace attendance and interact with coworkers and the public was

15    mildly to moderately impaired.[92]

16    The ALJ found Dr. Metoyer's opinions "somewhat but not entirely

17    persuasive" because 1) the categories of abilities/performance were broad and

18    "mild" and "moderate" were undefined; 2) there was no support in the record for a

19    significant limitation as to attendance, completion of a normal workday, and

20

21    _____

22    [92] AR 370.

23

adaptation to stressors; and 3) they relied mainly on Plaintiff's subjective reports, which were inconsistent with her reports to Dr. Genthe and to providers.

Because this matter is being remanded due to other errors, the Court need not address each of these arguments. However, for purposes of remand, the ALJ is advised that the fact that Dr. Metoyer noted, "The claimant reports history of atraumatic experiences including physical violence, physical assault,"[93] while Plaintiff reported to a therapist in June 2019 that her symptoms "appear to stem from traumatic incident a couple [years] ago" when a man jumped into her truck and tried to carjack her truck,[94] is not a sufficient discrepancy to constitute substantial evidence to support discounting Dr. Metoyer's opinion.[95]

## IV.    Conclusion

Plaintiff establishes the ALJ erred as to the initial part of the alleged disability period. However, the ALJ reasonably found that Plaintiff was able to maintain fulltime work after October 5, 2021. On remand, the ALJ is to assess

---

[93] AR 367

[94] AR 337–38.

[95] A claimant need not understand the cause for her mental impairment; rather, Plaintiff's burden is to establish that she suffers from a severe medically determinable condition that persisted or will persist for at least 12 months, and which was caused by a psychological abnormality that was confirmed by medically acceptable clinical diagnostic techniques. 20 C.F.R. §§ 404.1505, 416.905.

when—between April 7, 2021 (6 months after Dr. VanFossen's report), and October 5, 2021 (when Plaintiff reported she was making efforts to return to work)—Plaintiff's disabling anxiety symptoms so improved that she was able to return to work.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **GRANTED IN PART AND DENIED IN PART**.

2. The Clerk's Office shall enter **JUDGMENT** in favor of **Plaintiff**.

3. This matter is **REVERSED and REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)** to assess when Plaintiff's disability ended between April 7, 2021, and October 5, 2021. Disability benefits are to then be awarded from May 17, 2019, to the determined end-date of disability.

4. The Clerk's Office shall **TERM** the Commissioner's Brief, **ECF No. 12**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 12th day of July 2023.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge